Good morning, Your Honors. Daniel Sirr on behalf of the appellants. If I can reserve five minutes for my rebuttal. Okay. I realize there are a number of issues in this case. I thought I'd start with the most straightforward from my perspective, and that is the scarlet letter placed on out-of-state supported speakers. This case, this Court's decision in Thompson v. Hebden, actually twice, both times this Court made clear that it's not a legitimate purpose or interest for the state to discriminate against out-of-state speakers when they are engaging in different states' political activities. And so initially the state of Alaska capped the amount of money that an out-of-state donor could contribute. This Court has struck that down, and so the state is now trying a different tact in saying, well, we'll simply say if you are supported by out-of-state donors, then you have to tell people in your advertisements that fact as a way of diminishing the value of your speech. And I think that's just incompatible with Thompson v. Hebden. That's not a legitimate state interest. So there's another case in our circuit that deals with political ad disclosures that has priority over us. We're going to have to see what they say. In your view, does that decision inform this issue or not? I would say Alaska's law is unique in the country in requiring this out-of-state disclosure, the all-caps disclosure on the ad for organizations that are supported, receive a majority of their funds from outside the state, and as a result the interests that the state has are unique to this case and, as I say, I think are insufficient in this instance. So your answer to that question? I think Alaska's law is unique in this instance. You have to look for all the – I'll put it this way. There are a number of different things different states require you to say in an ad. I'm Daniel Sir and I approve this message. This ad is independent of any candidate or organization, right? The things we're all familiar with watching on televisions. Each of those has to be justified by a specific state interest, and those state interests are different as the court conducts an exacting scrutiny analysis. What Alaska is requiring is, to my knowledge, unique in the country in requiring an out-of-state donor, a supported organization, to broadcast that fact to viewers of its advertisements as it conducts its speech. And so that scarlet letter that Alaska is imposing on out-of-state speakers I think is unique and it has to be supported by specific interests. Those interests simply can't pass the scrutiny that Thompson v. Hebden – I should say the rationale of Thompson v. Hebden. Another – Let me ask you, I'm curious about whether or not this appeal is moot. Not whether the case is moot, but whether or not the appeal is moot. So especially in light of our precedent in defense of animals versus the Department of Interior. Yes, Your Honor. So I know that case. I also think Akina, the Hawaii Native Corporation case, is perhaps another good guide for this court. And what I draw from Akina are two principles, two prongs that you have to meet. First, the parties to the case must have ongoing interest in future elections. If you are a referendum committee and you're only interested in one referendum, if that referendum comes and goes, it makes sense that your case is moot. The second prong of that test is that the law has to govern future elections. So if a law is specific, for instance, to COVID-19 – this is one of the cases mentioned in our brief – COVID-19 isn't a concern anymore, that law is no longer in force, and so the appeal is moot. So you have these two prongs. In this instance, we're dealing with plaintiffs who are consistent players in elections. The donors donate and have a track record of donating across multiple elections, and they say in their affidavits that they intend to continue donating in future elections. The organizations that I represent are consistent players in multiple elections. So their first prong is covered. And the second prong is also covered. Ballot Measure 2 isn't going anywhere. The Alaska Public Offices Commission, APOC, continues to enforce it. And so I would say both prongs of the Akina test, which is the same test you see from other circuits as well, are met. In Akina, it seems like that the reason that it was relevant to the mootness inquiry that no future elections would occur was because the plaintiffs had sued to stop the allegedly racist election itself. Is that correct? Yes, Your Honor. And so, I guess, do you have anything other than Akina on that front? Well, so I think there are several cases that follow Akina from this circuit. They're all F appendix cases rather than F third cases. But each, I think we mentioned three in our brief, each of them goes to the same question, does the law continue to govern future elections? And so why doesn't in defense of animals apply here? Well, I think in defense of animals sets the general principle that a preliminary injunction appeal can become moot if the issues in the case are no longer timely. I guess the way I read it is that when the event from which the irreparable harm flows has occurred, the appeal is moot. And I would say there is a new event, and that event is the 2024 election, which amazingly enough is already upon us, right, from my client's perspective as candidates. Sorry, Judge. Sure. And I think we would all agree that the case is not moot, right? The problem is the preliminary injunction appeal and everything in the preliminary injunction motion alleged irreparable harm from the impending 2022 election. And then in terms of the question of whether this is a problem that's capable of repetition and evading review, I don't see anything in the record that suggests to me that you couldn't get to a full merits decision from the district court in time. And to the extent there is a problem, it's a problem of the plaintiff's own making by not seeking an injunction pending appeal, not requesting, not moving for expedited processing of this appeal, and for yourselves moving for a stay in the district court. All of which seems to me inconsistent with the idea that there is an ongoing continuing and impending irreparable harm that we must preliminarily address. And any decision from this court would only be preliminary. So it seems we also have case law saying, you know, it wouldn't be the final answer even on the merits of the case. So wouldn't it be better for you to actually just get your final answer from the district court? So there are a few points there. Let me try to respond to each. So as a policy matter, this court has an expedited track already to be on a preliminary injunction. I realize that it's been several months since the briefing and the notice of appeal and everything. But this is still fast for what the Ninth Circuit does. And I think that there are good reasons for this court to be hesitant to encourage campaign finance plaintiffs to come up every time in an emergency posture. Frankly, this case is a great example of where there are a lot of moving parts. There are multiple different prongs to our case. And that is not well suited to resolutions and a motions panel. And because this is a law that will apply to future elections, it's the kind of thing where, from my client's perspective, they knew they were going to participate in 2024. And so rather than trying to rush this court and, frankly, having a higher risk of losing, knowing courts' reticence to grant significant relief on emergency appeal with multiple issues, like rather than taking that risk, we said let's pursue the track this court already has for an expedited hearing on a preliminary injunction. And let's get relief in place for the 2024 election. And this case isn't one where we're challenging a particular mechanic of the process that happens on Election Day. I would agree with you that if that were the case, that's a year and a half away. But we're talking about speech about candidates. And that can happen very soon. We already have candidates for president running for 2024. And we will soon see in other states we may have candidates running for Congress. We'll soon see those things happen in Alaska as well. And the chances of my clients getting relief from the district court before those campaigns begin, I think, is sufficiently small that it justifies this court granting preliminary relief now. And why did you move to say the proceedings below? Frankly, Your Honor, I think that's pretty typical in my experience in cases like this. It's done, one, for the convenience of counsel to be able to focus on the appeal. Also, it's done, I think, for the convenience of the district court that knowing that the next step in this case would probably be a motion to dismiss and not wanting to create inconsistency between what this court might eventually decide on the likelihood of success on the merits and a motion to dismiss at the district court level. And so if we disagree with you on the baseline mootness, does the capable repetition exception apply here? I think it does, Your Honor, because, again, the 2024 election is coming up soon. And so it, in fact, is not only capable of repetition, it will be repeated. It is going to be repeated in the coming months as APOC applies the Alaska Public Offices Commission, applies this statutory scheme to the 2024 election. I agree it will be repeated. And I think where I get hung up is on the capable of evading review suggestion. And I understand you made some reasonable strategic decisions, but I still don't see how those strategic decisions are consistent with the contention that a preliminary injunction is necessary to prevent irreparable harm when far faster both appeal was available, even with our expedited review of a preliminary injunction. We provide for extra expedited review. We provide for a motion for an injunction pending appeal. And you could have proceeded below simultaneously. And if you had, I think there is a reasonable argument that you could have gotten an answer well before the 2024 election. So on capable of repetition, if you think about it from what would happen if you do return us to the district court, within the next couple of months, if my clients choose to start engaging in politics again, again, it's not only speaking, it's also donating. For my clients who are donors, they're going to get hit up tomorrow for incumbents who are running for re-election, that sort of thing. And then they're going to be forced into these disclosure regimes, or I should say more technically independent expenditures supporting candidates running for re-election. So we go back to the district court. If I say, well, you know, the 2024 election has begun, I need preliminary relief again, the district court is going to say, well, I'm going to rule against you for all the same reasons I ruled against you last time. You're not likely to succeed on the law. And then I'm going to spend six more months briefing these same issues, and then we're just going to be back in front of this court six months after that. And in the meantime, my clients will have been irreparably harmed because either their privacy will have been violated or their speech will have been compromised. Doesn't the rule that a First Amendment violation, no matter how long, is irreparable harm sort of dictate the outcome here? I think that is true, Your Honor. And I would say that is especially true in the Ninth Circuit where the Sanders County Republican Party case, so that even a day or two of impact to speech in a political context matters. Elections are fast-moving, fluid things. You know, if a candidate announced tomorrow and an independent expenditure group wanted to either support that candidate as they announced or oppose that candidate as they announced, the ability to participate in that speech in a timely way is important. And so a preliminary injunction in this case protects my clients as that fast-moving 2024 election unfolds. Before we run out of time, can we pivot to the merits? I do have a couple of questions there. So this case has given me an opportunity to try to divine what the Supreme Court means by exacting scrutiny and narrowly tailoring, and I have no idea. Some days you and me both, Your Honor. What is your take on narrowly tailoring? I mean, in conversations and chambers, we're making all kinds of analogies about how close does it have to be. What's your take? So obviously Americans for Prosperity versus Bonta, I think, is the starting point here. And the message I take from Chief Justice Roberts' opinion is lower courts, you've got to step it up, that the level of scrutiny that lower courts had been applying was not exacting. I think for Chief Justice Roberts, he looks at exacting and says, like, it means exacting. It doesn't mean slightly skeptical. It means really skeptical in that it's admittedly less than strict scrutiny, but we know strict scrutiny is presumptively unconstitutional, to use the phrase from Reid v. Town of Gilbert. And so it's a little bit less than that. It's maybe not presumptively unconstitutional, but it's a heck of a lot more than if the government's got a good reason, we'll be okay with it. So, I mean, the lift for you, right, is there's no doubt the government has a good reason, right? Information in elections has been found over and over again to be a legitimate government interest that is protected or is allowed to be advanced at the expense of First Amendment rights sometimes. And so it's not about the interest. It's about how close does the fit have to be to serving that interest. I would agree, Your Honor. I would say it's maybe a little bit different on the out-of-state speakers provision because I think there the government's interest is insufficient under Thompson v. Hebden. But for the rest of it, you're right. It's about the burden that's placed on my clients. And I would just point out it's a burden the government bears. My job is to raise a colorable claim. That's the phrase this Court uses in, again, the Sanders County case. And once we've raised a colorable First Amendment claim, it is the government's job to bear the burden to show that it is narrowly tailored. And there's a reason for that. Because in a free society, we protect free speech. We assume free speech. And it's the government's job to show its law is narrowly tailored to the interest that it's asserting. I'm trying to figure out what your view is on ACLU v. Nevada v. Heller. And hasn't that effectively been overruled in light of Citizens United? No, Your Honor. So there have been several cases since Citizens United. I will admit that they have perhaps distanced themselves from ACLU cases from this circuit. But this circuit has not overruled ACLU v. Nevada, ACLU of Nevada, even though it's been given several opportunities to do so. So I would say it is still good law. And it's good law for a reason, right? All ACLU says is it is a content-altering requirement to make somebody say something they wouldn't say otherwise. And I don't think that's just ACLU v. Nevada. That's NIFLA v. Becerra just last year. In NIFLA, the Supreme Court seems to have held that the disclaimers in question were subject to strict scrutiny. Is that correct? My memory was exacting scrutiny. I'm sorry. Yes. You're correct. That's right. So it's exacting scrutiny in NIFLA. It was exacting scrutiny in NIFLA, Your Honor. Although I would say in NIFLA, the court kind of puts it in that category because of the professional speech context that it arises in. And this obviously is a different context. When we're dealing with elections, the level of scrutiny the courts apply is greater because we're closer to the heart of the First Amendment. And there are a number of cases, you know, Reed v. Town of Gilbert, I think, is probably the best example where the Supreme Court applies strict scrutiny to content-based content-altering restrictions, which this would be. You've made a number of arguments about why this would be hard to do. I'm focused on the individual donor requirement. You've made a number of arguments about why that would be difficult for individuals to comply with, which make sort of logical sense to some degree. The way I read the complaint, though, they're not very supported in terms of actual demonstration of difficulty by individuals. What do we do with that? So this is a facial challenge. It's not something specific to any individual client. And so I think the test you're asking, the question you're asking is, does an ordinary citizen of Alaska going to be able to comply with this? And the Supreme Court in Citizens United, I think, has a great line where it says, you shouldn't have to hire an attorney to figure out what the campaign finance law is. And for the average citizen of Alaska, they don't know which organizations are engaging in independent expenditures necessarily. And they certainly don't know which organizations have engaged in independent expenditures in the past two years or which organizations are likely to engage in independent expenditures in the future. So I want to tease that out and give just an example to play with this idea for a minute because I'm struggling with the facial challenge issue. So the requirement is that an individual fill out a form within 24 hours of making a triggering donation. And that form has to be done online. So this is Alaska, very rural. I think there's probably a bunch of people in Alaska who don't have the Internet and aren't like two blocks from a library that has Internet. But there's nothing in the complaint that tells me that. This is just a hypothetical I'm conjuring up in my mind. I also don't know anything about whether people who don't have Internet donate to political campaigns. So what do I do with all of this? I would say the question you're asking is, is this onerous and burdensome? Right, that's another way of asking the exacting scrutiny test that this court has used in the past is sort of to balance the burdens that it imposes versus the interest that the state has. And here the interests the state has are pretty marginal. A lot of this information is already being, in fact, all of this information is already being reported by the recipient organization. And that recipient organization, by the way, gets 10 days to make its report. So sophisticated political organizations that have attorneys on staff that do compliance all day, they get 10 days. Average everyday Alaskans are required to do so within 24 hours. I think that's burdensome compared to the interest the state has. So is it average everyday Alaskans or is it average everyday Alaskans who have the ability to donate $2,000 to a PAC? I think that's probably a distinction without a difference, Your Honor. I know that $2,000 in some contexts seems like a lot of money, and it is. I don't want to deny that. But in the context of politics, I think we're dealing with multimillion-dollar campaigns that happen on a regular basis, and that $2,000 covers probably a lot of small business people and white-collar professionals and others who choose to donate. How do you distinguish this case from the Chula Vista, citizens for jobs and fair competition? Yes, all good things. Citizens for all good things. So as we mentioned in our brief, Your Honor, Chula Vista involved a relatively narrow required disclaimer. It was who was sponsoring the ad. And as I say, there can be particular interests that justify that. The government has to have different interests to justify not just who sponsored the ad but also the top three people who donated to the ad. In fact, there's a great line from the ACLU case. There's also a good line from the First Circuit in the vote choice case where the courts recognize that the donors behind the ad provide less informational value than the name of the organization itself. And then I would say again for the out-of-state disclosure provision, that is significantly more burdensome than what the court was considering in Chula Vista. So there are definitely different interests there on the state's part, and they're insufficient under Thompson v. Hebden. Thank you. I see my time is up. Thank you. Thank you. May I please the court? My name is Laura Fox, and I represent the members of the Alaska Public Offices Commission. The appellants want this appeal to be something it's not. They want it to be a challenge to the decades of precedent upholding disclosure and disclaimer laws in the campaign finance context, but this court is bound by that precedent. They want it to be about the heavy hand of state government versus everyday Alaskans, but everyday Alaskans pass these laws by ballot initiative because they want this information. And the appellants also want this appeal to be a shortcut straight to winning this case without having to do the work in the district court. This is just an appeal from the denial of a preliminary injunction, so this court isn't here to decide the merits. And the weak showing that the plaintiffs have made so far does not warrant the extraordinary relief of a preliminary injunction. And so before addressing the merits, I first want to make four hopefully quick points about the lack of irreparable harm here, two about disclaimers and two about disclosures. So first, almost all of the challenge disclaimers, except for the out-of-state thing, have been in place since 2010. So the name, the top three donors, the cities of the top three donors, yet these plaintiffs didn't sue until 2022, and that helps show that they can wait a little while longer. And second, none of these plaintiffs actually assert in their declarations anywhere that they intend to produce any ads that have to include the disclaimers or that they're being chilled from producing ads because of the disclaimers or even that they've ever run any ads that had to include disclaimers. That's just not in the declarations. So the record doesn't contain any evidence to support finding that these plaintiffs are likely to suffer irreparable harm from the disclaimer law. Even if we grant that a First Amendment harm is irreparable harm, you have to show that you are likely to suffer that harm. So similarly, two points on the lack of harm from the disclosure law. So first, again, now that the 2022 election is over, none of the declarations assert that any of the plaintiffs intend to make any contributions that would trigger disclosure anytime soon. And second, even if they did include that, an injunction in this case wouldn't actually remedy the harm that the declarations focus on. Well, Counselor, the way I read the declarations, they do say that they would like to make donations including for the 2022 election, and I don't think that there was a limit, at least the way I read it. And I also read the complaint as including some entities that allege that they do make the kind of advertisements or want to make the kind of advertisements for which the disclaimer requirement would apply. And I assume you would consider the complaint in addition to the declarations. Well, I think for purposes of looking at whether they've made their case for a preliminary injunction, they need to produce evidence to support the irreparable harm, the likelihood of irreparable harm, not just allegations in the complaint. And second, if you look at the declaration, the only time frame that they include is that reference to the 2022 election. Otherwise, they don't have any time frame that could indicate any urgency. But again, even if they did, an injunction wouldn't remedy the harm that they focus on because they talk about not wanting their contributions to be public, but an injunction in this case wouldn't actually keep their contributions private because they don't challenge the recipient disclosure law. So even if they got an injunction here, the recipients would still disclose their donations. Their donations wouldn't be private. They wouldn't stay anonymous. And all an injunction would save them is the minor hassle of filling out this online form. Isn't there also the issue of putting all these rules in place might chill or discourage someone from otherwise participating in the political process? They don't make that allegation in their declaration. They don't say, I'd like to make a contribution. I want to make a contribution next week, but I'm not going to because I'm going to have to fill out this online form. The chill that they speak about is the chill of having their names out there. But again, they don't challenge the recipient disclosure law. And so their names would be out there regardless of whether they got this injunction. So again, the injunction would only save them the necessity of filling out this online form, which the court can look at and see is not difficult. And that's not the kind of irreparable harm, this having to fill out this online form that should justify short-circuiting the normal litigation process with an injunction. How do you contrast this case with Porter v. Jones? I apologize, I'm not. In that case, we recognize that election cases are often not moot because they are capable of repetition and evading review. So I wouldn't necessarily characterize this case as moot. I think there are two ways to look at this. I would say this appeal in this case may not be moot, but at this point the plaintiffs have not satisfied the irreparable harm prong of the test for a preliminary injunction, particularly given that now the election is over. I think before the election was over, perhaps you could read their declarations generously and see that perhaps there was arguable irreparable harm there. But now that we're after the election, if you look at those declarations, and particularly in the case of the disclaimers, since as I said they don't mention wanting to run ads at all, the disclaimers are deficient and don't support extraordinary relief. So I don't have a lot of time, so I would like to talk about the merits a little bit, address the disclosures first and then the disclaimers. District Court applied the correct legal standard, which is exacting scrutiny, didn't abuse its discretion in applying it. We're operating with this background of courts upholding disclosure and disclaimer laws for decades. Citizens United is premised on disclosure being the approved alternative to more restrictive campaign finance laws like contribution and expenditure limits. Well, do you disagree that the case law also talks about a concern of discouraging people from participating in the political process, which we have equated to be speech? Yes, and that concern is why exacting scrutiny applies. So that concern is the justification for applying exacting scrutiny to these kinds of laws, even though they don't directly suppress speech, they don't prevent speech, they just potentially have some of that chilling effect. But I think it's important that the Supreme Court's also recognized that in the campaign finance context, there's First Amendment interests on both sides of the equation. So it's hard to have a robust political debate if you don't know who you're talking to. Alaskans don't want their political discourse to turn into an anonymous Internet message board full of trolls. And these are elections where our democracy is at stake. So in this context, particularly of campaign finance, it's special because we have First Amendment values on both sides. And that's a given. I think that's a given. So what about your friend on this other side makes an argument about, you're already getting this information. Again, I'm focused on the individual donor disclosure. You're already getting this information. So you're putting on a set of rules, some burdens on individuals to get information that you're already getting. That seems a pretty compelling argument to me. What's your response to that? Well, since they haven't challenged the recipient disclosures, the flip side of their redundancy argument, the other side of the same coin, is that this isn't about keeping their contributions private. It's just about whether they have to fill out this form. And particularly for an individual who is the true source of the contribution, filling out the form is easy, and the court can look at the form, the court can see that this is easy. They haven't come up with a single person who says that it's hard. And having both sides of the transaction disclose ensures accurate reporting and also protects everybody's interest. I don't think you're answering the question. Are you conceding that what the individuals are being required to disclose is stuff that the entities are already doing? The entities are also required to disclose, and I wanted to point out that it's also a 24-hour reporting. It's not a 10-day reporting for the recipients. That's when you're on the eve of an election, right? No. So it's AS-15-13-110-K is just the analogous provision. It's just like the donor provision for the recipients when it comes to these $2,000 donations. Okay, so to step back once, maybe it's a point taken, I think you're saying this is redundant. Well, it's not redundant in that no one person has to disclose twice. We just have two entities trying to… But all of these rules, we say that they're okay because they serve an informational interest for the electorate. If the electorate is already getting all the information through another means and now we're adding a new rule that gets us to the same means, why are we doing that? Well, I was about to explain that. It helps protect both sides of the transaction also. It protects everybody's interest because the recipient doesn't have to hound the donor for the information after the fact because the donor who has the best access to the information has to provide it up front. And then also, the need to report gives these large donors a heads up that these campaign finance laws are in play and that their names might be appearing on ads if they're a significantly large donor. And so, again, no one person is being required to disclose twice. And since they don't challenge the parallel recipient disclosure requirement, this is just about them not wanting to fill out the form. They want somebody else to make the disclosure instead of them. But, I mean, again, we have exacting scrutiny, not strict scrutiny here. And my time is up, so I guess I'll have to leave the issue of the disclaimers to Mr. Kendall. Thank you. Thank you. Thank you. I'm going to please the Court. Scott Kendall on behalf of the intervening defendants, Alaskans for Better Elections. I would start off with a quick remedy to, I think, some confusion by Mr. Sewer. He was talking about, well, 2024, it's here. People are campaigning for president, for Congress. Very important to remember, Alaska can't regulate federal races. Campaign finance of federal races is a product of the FEC. None of these laws apply to any congressional candidate, any presidential candidate. And furthermore, under Alaska law, no one can become a candidate for state office until 18 months out from that election. So, you know, to some degree, we're not there yet. I'd also point out that at the time the plaintiffs below requested this day, there was actually a pending dispositive motion filed by my clients to resolve this case. So to the extent we're talking about, you know, it is capable of repetition in the sense every two years we're going to have an election, but it's not evading review. It's a facial challenge to a statute. That statute's sitting there. We can finish this case below any time. We can have the final answer, and we won't have it on this bare-bones factual record. It seems to me on the mootness question that there is a difference between the donor disclosure and then the ad. I can't remember the word. Ad disclosure. They both seem like disclosures to me. Ads, political ads, are typically tied to an election cycle. Donations often are but aren't necessarily. People can donate to a political cause at any time. And the allegation was that ballot measure two, they wanted it enjoined through the pendency of the litigation because of the irreparable harm that it poses to First Amendment rights. So at least on the donor side, why do we care if it's connected to a specific election cycle? It isn't, but it's important to sort of take that step back again. It's important because why we're here today is a preliminary injunction expressly requested for the purposes of the 2022 election. I don't think it was limited. I mean, they asked for an injunction. I'm looking. This is the quote from SCR 82. Plaintiffs asked this court to issue an order preliminarily enjoining challenged portions of ballot measure two while this case remains ongoing, not just connected to the 2022 election. Well, that would kind of take me back to the other point. Why did we stay the case? Why did they request the stay if what we want is not to gum up the gears but rather to reach an ultimate resolution of whether we can have these rules? Let's reach them. Let's reach them on an expedited fashion. We were already at the point the case was stayed. The case was moving along quite briskly. So it's, you know, again, if it's a problem and we don't concede it's a problem, it's a problem of the plaintiff's or appellant's own creation. They stayed a case that, you know, frankly, probably would have been resolved at summary judgment months ago and we'd be before this court in a very different posture. So the mootness question would fall away and we'd have clarity into the issues. And again, I think it's, you know, we have a factually bare bones record. We have an appeal that's not a full appeal. It appeals parts of the elements but not others. The record is factually bare bones. Why don't we go back to the district court and get a final resolution? These are important issues. First Amendment issues are incredibly important. Ballot Measure 2, along with a few other measures in Arizona and California, are at the cutting edge of campaign disclosure. Let's resolve these issues but let's resolve them in a way that doesn't piecemeal parts of the statute up to this court, again, without a record, without a final resolution below. And again, I think, you know, the cases cited are the Planned Parenthood case. If the relief sought is impossible to grant, it's impossible to resolve these issues for the 22 election, then it's moot. Now, they're trying to, I will admit, in their supplemental briefing, they've pulled in ideas that there's other elections coming and so forth, but there was pretty solid clarity below at the district court. They were making this move for injunctive relief because here comes the election. Okay. So I'm going to jump ahead a bit. If we go into the merits. Yeah, yeah, so if we go into the merits. How is the 24-hour individual donor contribution recording requirement narrowly tailored to the government's informational interests? Yeah, it's narrowly tailored in a couple of ways. First of all, we are not talking about Joe or Jane Sixpack walking down the street. We're talking about people who donate $2,000 or more. Furthermore, we're not even talking about people who donate $2,000 to their favorite senator or governor. We're talking about sophisticated actors who are donating $2,000 to a political action group. How do we know that? I mean, I have to say I have life experience here. I have a grandmother, had a grandmother. She's passed away now. She lived on Social Security, very engaged politically. She would make donations in excess of $2,000, even though she had a very modest life. So what tells us that the – I mean, I think in the briefing it says that the $2,000 mark tells us what a major donor is versus what something not a major – I'm not sure that's true. Well, there is some indication that that is a rational line to draw. We have the GASB project case out of the First Circuit where we had a top-five donor disclosure and we had a $1,000 threshold for disclosure. The cert was denied by the U.S. Supreme Court on that. There is a line, I think, above and below. We have the Buckley v. Vallejo. Buckley v. Vallejo said you donate $100 or more to a political candidate, informational interests, interests of anti-corruption, $100 is a reasonable limit. So, again, we're up here at $2,000. And if we go below, you know, if this case were to go back to the district court, we as the defendants would be able to make a factual showing of the very narrow number of a few sophisticated players who operate at that level. And, again, it's important to go to what the state has submitted because they've submitted what the online form is and we would offer that the actual filling out of the online form is literally no more difficult than making the donation itself. Who am I? Who am I donating to? How much did I donate? It's not exotic. It's not difficult. But what the 24-hour rule seeks to avoid is two weeks out from Election Day, hundreds of thousands, millions of dollars can course through an election system and some of those disclosures keep trailing to where it's too late for the public to view them. It's too late for the press to publicize them. And so the 24-hour rule, only applied at a reasonable threshold of $2,000 or more, is a trigger that at least puts that information out there for the public. And, again, no more difficult, certainly less complicated than wiring money and no more difficult than writing the check itself. Is this disclosure have a time limit to two weeks before the election? No, the 24 hours for the $2,000, there is a 24-hour rule that applies 10 days out from Election Day for candidates. This applies throughout the election cycle. And how do you distinguish this case from Thompson v. Hebden? In the context of in-state and out-of-state donations? Correct. Yeah, in that case, it's very important. And the scrutiny that applies. Yeah, that was a donation limit, so that's a hard cap. That says if you're a candidate, and I don't remember the exact numbers, but hypothetically, if you're a candidate for state legislative office, you can take $10,000 and not a penny more from an out-of-state donor. That was found to be unconstitutional and probably rightly so. What's applied here is an out-of-state disclaimer that's informational in nature. It's not a limit, but it's we're a small state, 700,000 residents, 500,000 voters, routinely we have millions of dollars coursed through our elections, and we have entities donate to entities donate to entities. Some of them are called Alaskans for Fishing, Families of the Last Frontier, 99.9% funded by funds that come from out-of-state. So to counter the fact that we're not going to limit the amount of out-of-state donations, we're going to say when one entity gets 50% or more of their money from out-of-state sources, they're just going to say that. It doesn't say it's bad. It doesn't say anything other than it's a shortcut for the voter. And again, it's not that different than what exists already in prior laws, which is top three reporting requirements. They actually list the top three donors where they're from. They're from Vermont. They're from Akron, Ohio. So it's a shortcut for the voters. It puts important information in their hands whether they care or not. So that would be the distinction. And it looks like I'm coming close. So I guess I would conclude with, again, just a request that, you know, we reject this particular appeal and get us back to the district court where we belong so we can get a decision on the merits and prevent the actual damage that could come to the public and informational interest from improvidently allowing an injunction to go forward indefinitely. Let's get a decision on the merits. And because the district court didn't abuse its discretion, and that's an important point that I skipped over, did she abuse her discretion below? And she did not. And we would ask this court to reject this appeal, send us back to the district court, so we can get a decision on the merits in this case. Thank you. You're out of time, but I'll give you a minute. Thanks for the indulgence, Your Honor. I will try to make four points in 30 seconds apiece, if that's fair. The first I would say is that 18 months from November of 2024 is pretty much today. The second, I would say the counsel for the state admitted that the disclosure is a double disclosure, and I would especially point this court to FEC versus Cruz, where the Supreme Court again said this sort of prophylaxis, a top prophylaxis approach is what fails narrow tailoring. The third thing I would say, you know, especially Mr. Kendall pointed out over and over again that this is a case on a bare bones record. Well, the answer to a bare bones record is discovery, documents, depositions of my clients, depositions of state officials, potentially expert witnesses in this case. All of that is going to take time. So I think Mr. Kendall kind of wants it both ways. He wants to say this case will just be lickety split and done at the district court, no need for a preliminary injunction, but then to also say, well, we need a really thorough, full factual record to come back on, even though that's going to take a lot of time. And the final thing I'd say is to illustrate the narrow tailoring that's not here. To the Chief Judge's question, they could have said 24 hours within the last two weeks or within the last 30 days. This court has reviewed many statutes before that say an electioneering communication, for instance, is anything that mentions a candidate within the last 30 days. But this is not narrowly tailored because it applies at all times. You made, I think, a statement right now about the true source information, but that's not filed by the recipient organization, correct? My understanding is it's filed by both, Your Honor. That was not my understanding because you said it was duplicative. Right. So I think the state's argument, and I don't want to put words in their mouth, but the state's argument is, well, we need it from the donor because the donor knows the true source best. And my response to that is, well, the donor also knows his address, his employer, his occupation best, and yet for decades it's been the recipient organization that's reported that information. And so I don't see how the state here can suddenly say, well, we need this different kind of information in a different way that is, in my understanding, redundant.  Thank you very much. Thank you, Your Honor. All right. Thank you all for your oral argument presentations. The case of Doug Smith v. Ann Helzer is submitted on the briefs. That concludes our docket for today and for our week. So we are adjourned. Thank you very much. The court for this session stands adjourned. Thank you.
judges: MURGUIA, FORREST, SUNG